IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Davy Cady, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 05 C 0081 |
| Sheriff Michael Sheahan, *et al.*, | ) ) Hon. Mark Filip |
| Defendants. | ) ) ) |

## MEMORANDUM OPINION AND ORDER
## DENYING RULE 60(b) MOTION

*Pro se* plaintiff Davy Cady filed suit against dozens of state government officials and judges relating to his misdemeanor criminal convictions in the Circuit Court of Cook County. Specifically, Cady has filed suit against the Illinois Supreme Court; the Administrative Office of the Illinois Courts; Cynthia Cobbs, who is described as the "Directress" of the Administrative Office of the Illinois Courts; the Office of the Official Court Reporter of Cook County; Marilyn Filisho, who is described simply as an "Administratress"; Casimir Kowalski, the "Supervisor" of the Court Reporters in the 6th Municipal District for the Circuit Court of Cook County; the Office of the Chief Judge of the Circuit Court of Cook County; the Honorable Timothy Evans, Chief Judge of the Circuit Court of Cook County; the Office of the Presiding Judge of the Sixth Municipal District, Circuit Court of Cook County; the Honorable Ronald Riley; the Honorable Thomas O'Hara; Michael Sheahan, the Sheriff of Cook County; Richard Devine, the Cook County State's Attorney; fourteen assistant Illinois State's attorneys; and unknown others, including an unidentified courtroom bailiff.

Before the Court is Plaintiff's "Motion for Relief from Judgment Due to Mistake and to

Be Informed How His Complaint Is Defective with Leave to Amend Again" (D.E. 8) (the "Rule 60(b) Motion for Relief") and Plaintiff's "Motion for Leave to Supplement His 60(b) Motion, for a Certification of Any Forthcoming Denial of His Pauper Petition, for an Interlocutory Appeal, and for Leave, if His Pauper Petition Is Denied, to Be Allowed a Definite Time Period in Which to Borrow or Otherwise Raise the Money for His Filing Fee" (D.E. 11) (the "Motion for Leave"). As explained below, Plaintiff's Rule 60(b) Motion for Relief and Motion for Leave are denied for multiple independent and adequate reasons. First, Plaintiff has not persuaded the Court that he did not receive notice that he needed to provide complete information concerning his *in forma pauperis* application. Second, irrespective of any notice issues, Plaintiff thereafter refused to answer straightforward questions from the Court concerning his financial circumstances (such as, for example, the amount of his rent) because, among other reasons, Plaintiff suggested that he needed to consult with his accountant and further suggested that his accountant likely was busy during income tax season. As a result, even when Plaintiff was afforded an opportunity to orally explain why he should be afforded *in forma pauperis* status, Plaintiff still did not show that he is entitled to a waiver from the filing fee that litigants in federal court presumptively must pay. (Or, put differently, Plaintiff did not discharge his burden of showing that the taxpayers of this country should fairly be called to absorb the costs of Mr. Cady's filing fees.) Finally, and again independently, even if a plaintiff who refused to answer straightforward questions bearing on his financial circumstances could somehow qualify for an exemption from the presumptively applicable filing fee, this suit, like others Plaintiff has unsuccessfully filed in this courthouse, is frivolous and also seeks to sue defendants who are immune under the law. Therefore, the suit independently would be subject to dismissal under 28 U.S.C. § 1915(e)(2)(B).

## BACKGROUND

As Judge Nordberg wrote in June 2003, in the course of dismissing one of Plaintiff's many cases, the plaintiff in this suit, Mr. Davy Cady, "is an experienced *pro se* litigator." *Cady v. Cook County, Illinois, et al.*, No. 02 C 8333, D.E. 16 at 1 n.1 (N.D. Ill. June 10, 2003) (collecting numerous *pro se* cases filed by Plaintiff). Cady appears to have never succeeded in federal court on a single claim, and many of his cases have been deemed frivolous and/or outside the jurisdiction of the federal courts by various District Courts and the Seventh Circuit as well. *See, e.g., Cady v. City of Chicago*, No. 01 C 5152, D.E. 48 (Apr. 23, 2002 Minute Order of Judge Nordberg), at 1 ("[T]he City has pointed out the numerous defects with each of the many legal counts set forth in the amended complaint. We agree with most (if not all) of the City's arguments and see no need to march through each of them here. Looking at the bigger picture, we can find no conceivable basis for plaintiff to prevail on a federal claim."), *aff'd, Cady v. City of Chicago* No. 02-3661, Fed. Appx. 61, 2003 WL 21018245, at *1 (7th Cir. May 5, 2003) (unpublished order) (dismissing appeal as "patently frivolous"); *Cady v. DaCosta, et al.*, No. 02 C 3188, D.E. 3 (June 13, 2002 Minute Order of Judge Zagel), at 1 (dismissing case for "want of jurisdiction and venue"); *Cady v. South Suburban College, et al.*, No. 02 C 8128, D.E. 39 (Nov. 18, 2003 Minute Order of Judge Bucklo), at 1 (dismissing numerous defendants in Plaintiff's "155 page complaint alleging 49 counts" because, notwithstanding Plaintiff's sprawling allegations, "none of them even arguably states a federal cause of action nor a proper pendant state claim"); *Cady v. South Suburban College, et al.*, 310 F. Supp. 2d. 997, 1001 (N.D. Ill. 2004) (Bucklo, J.) (denying Mr. Cady's motion for sanctions against defendants as "wholly meritless" and dismissing Cady's remaining claims in Case No. 02 C 8128 with prejudice on

3

grounds of lack of jurisdiction, qualified immunity, and failure to state a claim), *appeal pending, Cady v. South Suburban College, et al.*, Seventh Circuit Case No. 04-2044.

The procedural history leading up to this memorandum opinion is as follows. On January 6, 2005, Cady filed a "First *Pro Forma* Complaint" in which he named various putative defendants (including some not specifically identified) who were apparently employed by or affiliated with the Cook County Sheriff's Office. On January 11, 2005, this Court issued an order denying Plaintiff's application to proceed *in forma pauperis* on the ground that Plaintiff had not submitted a completed financial affidavit. (D.E. 5.) That order stated that "[i]f Plaintiff does not file a completed *in forma pauperis* application within 21 days, [Plaintiff] must pay the standard $150 filing fee for a civil suit to proceed in this Court or his case is subject to dismissal without prejudice until he pays the applicable filing fee or otherwise demonstrates indigency."[1] (*Id.*) Rather than pay the presumptively applicable filing fee or file a completed financial affidavit, Plaintiff filed, on February 7, 2005, a "First Amended and Supplemental Verified Complaint" (D.E. 6) ("Amended Complaint"), which asserted 10 counts in shotgun fashion against dozens of putative defendants, as described above. On February 18, 2005, the Court dismissed Plaintiff's Amended Complaint without prejudice due to Plaintiff's failure to comply with the Court's Order of January 11, 2005. (D.E. 7.) The Court also noted that "[t]here appear[ed] to be numerous independent and fundamental defects with Cady's [Amended Complaint]," such as statute of limitations problems and immunity issues. (*Id.*)

On February 23, 2005, Plaintiff filed the Rule 60(b) Motion for Relief. (D.E. 8.) In that

---

[1] The Court notes that, effective February 7, 2005, the standard civil filing fee increased from $150 to $250.

4

motion (as well as the hearing on the motion, discussed *infra*), Plaintiff argued that he never received a copy of the Court's order of January 11, 2005 (*id.* ¶ 2), and suggested that the United States Post Office may have been responsible for him not receiving it (*id.* ¶ 3).

On March 9, 2005, Plaintiff presented his Rule 60(b) Motion for Relief to the Court at a hearing. Because the motion implicated Plaintiff's financial status, and because *in forma pauperis* applications must be submitted under penalty of perjury, Plaintiff was sworn in before he began to address his financial circumstances. During that hearing, Plaintiff was repeatedly unresponsive and/or evasive when asked straightforward questions about his financial circumstances.

The questioning began with the Courtroom Deputy asking Cady whether he would tell the truth, the whole truth, and nothing but the truth. Cady smirkingly responded that he "essentially" would so swear, but that "as a mere human being, I can't claim to know the whole truth, but I'll answer any questions you ask me to the full extent of my honest ability to do so." (Hr'g. Tr. of Mar. 9, 2005, at 1-2.) Cady's subsequent answers made clear that his promise to answer questions fully was a hollow one.

In response to subsequent questioning from the Court, Plaintiff repeatedly refused to answer reasonable questions concerning his financial circumstances. For example, Plaintiff repeatedly refused to answer questions concerning the amount of money he may have received from a business that he operates, suggesting instead that he needed to speak with his accountant before answering questions concerning his income. (*Id.* at 2-5.) Plaintiff also declined to answer basic questions about his living expenses, such as how much he pays his mother in rent. (*Id.* at 6, 8-9.) Plaintiff instead indicated that he preferred to "defer the answer to that to when all the data

5

is available." (*Id.* at 9.) On March 10, 2003, Plaintiff filed his Motion for Leave. (D.E. 11.)

Plaintiff's motions are denied. As explained below, Plaintiff did not demonstrate that he is entitled to shift the presumptively applicable filing fee relating to his suit to the taxpayers of the United States because Plaintiff refused to provide basic financial information that bears on whether he is exempt from such a fee. Moreover, even if Plaintiff somehow could be absolved from the consequences of his refusal to provide such information, Plaintiff's suit would be subject to dismissal under 28 U.S.C. § 1915(e)(2)(B).

I. Plaintiff Has Not Rebutted The Presumption in the Law that He Received The Notice Mailed by The District Court Clerk's Office

It has been the law in the United States for a very long time that when a piece of mail is sent to someone through the U.S. mails, there is a presumption that the addressee in fact received such mail and can fairly be held accountable for the consequences of the letter or mailing. *See Kimberly v. Arms*, 129 U.S. 512, 529 (1889) ("Though it is not shown that Arms received the letter, yet, as it was mailed to his postoffice address in Youngstown, Ohio, the presumption is that he did receive it."); *accord, e.g., McPartlin v. Comm'r of the Internal Revenue Serv.*, 653 F.2d 1185, 1191 (7th Cir. 1981). In this case, the records and official docket of the Clerk of United States District Court reflect that notice was duly mailed to Cady of this Court's January 11, 2005 Order, which informed him that "[i]f Plaintiff does not file a completed *in forma pauperis* application within 21 days, [Plaintiff] must pay the standard $150 filing fee for a civil suit to proceed in this Court or his case is subject to dismissal without prejudice until he pays the applicable filing fee or otherwise demonstrates indigency." (D.E. 5.)

Under the law, Plaintiff is presumed to have received such notice.[2] Plaintiff has denied under oath that he received the notice. However, this Court had an extensive opportunity to converse with Plaintiff at the March 9, 2005 hearing, during which time Plaintiff was repeatedly evasive and refused to answer basic questions concerning his financial circumstances. Given the Court's opportunity to observe Mr. Cady and to assess his credibility, demeanor, and forthrightness (as discussed further below), the Court cannot fairly conclude that Mr. Cady's denial of receipt rebuts the presumption applicable under the law. Mr. Cady began his responses at that hearing with a smirking equivocation concerning his acceptance of the oath, and things went downhill from there, culminating in Mr. Cady refusing to answer how much his rent is. (Hr'g. Tr. of Mar. 9, 2005, at 8-9.) His demeanor and tone of voice were that of someone who viewed the proceedings as a source of amusement, not of someone sincerely or fairly attempting to address the situation at hand. In addition, Mr. Cady does not claim that the Clerk's Office somehow has transposed or erroneously recorded his address; indeed, Plaintiff appears to accept that he has received notice of the dismissal without prejudice of his suit at his address via notice mailed by the Clerk's Office. Under such circumstances, the Court cannot fairly grant Plaintiff's Rule 60(b) Motion for Relief, as Plaintiff has not rebutted the presumption of notice provided by the law through his naked denial of having received notification from the Clerk's Office.

II.  Independent of Whether Plaintiff Received Notice Prior to The Court Hearing, He Refused To Provide Basic Financial Information At that Time and Therefore Has Not Shown He Is Entitled to Any Waiver From the Presumptively Applicable Filing Fee.

Under 28 U.S.C. § 1915(a)(1), a federal district court may authorize a litigant to proceed

---

[2] The Court notes that Plaintiff did not provide any telephone number at his residence to the Clerk's office.

"without prepayment of fees" if the litigant demonstrates that he or she "is unable to pay" the filing fee. 28 U.S.C. § 1915(a)(1). This section requires that a litigant file an affidavit in connection with a application to proceed *in forma pauperis*. See *id.* The Seventh Circuit has held that district courts in the Northern District of Illinois may require litigants to fill out financial affidavits prescribed by the local rules and that a district court may dismiss a suit on the ground that a litigant failed to comply with those rules. See *Zaun v. Dobbin*, 628 F.2d 990, 993 (7th Cir. 1980).[3] As noted above, the Court denied Plaintiff's *in forma pauperis* application on the ground that Plaintiff did not complete the financial affidavit. The Court then dismissed Plaintiff's suit without prejudice after Plaintiff did not comply with the time frame set forth in the Court's order regarding payment of the filing fee or the filing of a completed financial affidavit. (D.E. 7.)

Regardless of whether Plaintiff received notice of the Court's order of January 11, 2005, however, Plaintiff would not be entitled to relief under Rule 60(b). That is the case because Plaintiff failed to answer basic questions concerning his financial status so as to allow a reasoned determination of whether he should be exempted from the presumptively applicable filing fee.

Plaintiff had ample opportunity to do so. Indeed, the Court explored, or at least attempted to explore, this subject with him at the March 9, 2005 hearing. Mr. Cady seemed to consider the entire inquiry as some sort of joke. For example, when asked to address the subject of his income, Mr. Cady proceeded into hair-splitting about tax law. When the Court explained that it

---

[3] Local Rule 3.3(e) provides in relevant part that "[u]pon denial of an IFP petition, [i]f the required fees are not paid within . . . such . . . time as may be fixed by the court, . . . . [t]he court may then apply such sanctions as it determines necessary including dismissal of the action." Local Rule 3.3(e).

was not trying to delve into nuances of tax law but rather was simply trying to get a pragmatic assessment of Cady's financial status, Cady refused, in essence, to answer questions about the amounts and types of monies that he has received via a business that he operates. These refusals were predicated on a purported need to consult with his accountant or to subpoena his accountant before answering. *See, e.g.*, Hr'g Tr. of Mar. 9, 2005, at 4-5.

Notwithstanding Mr. Cady's refusal to address questions concerning his financial receipts that might bear on his putative *i.f.p.* status, and notwithstanding the sarcastic manner in which he conducted himself, the Court considered giving Cady the benefit of the doubt on the issue until Mr. Cady then stonewalled on the amount of rent he pays. (Mr. Cady lives with his mother, and it appears that his living expenses may be substantially subsidized via that arrangement.) When asked how much he pays in rent, Mr. Cady explained that he would like to answer the question "a few weeks from now" and that he wanted "to defer the answer to that to when all the data is available." (*Id.* at 8, 9.)[4]

---

[4] At the hearing, and again in his Rule 60(b) papers, Cady appears to contend that he should not be required to address certain financial matters because they supposedly are not specifically included on the preprinted *i.f.p.* form used in the district. (*See, e.g.*, Hr'g. Tr. of Mar. 9, 2005, at 9 (Cady explaining that "arguably it's not absolutely required that that question be answered."); D.E. 11 ¶ 4 (Mr. Cady's references to the "intent of the framers of the second question in the U.S. District Court pauper application . . . .") The Court rejects this argument. The form *i.f.p.* application in this district asks a variety of generalized questions that allow the *i.f.p.* assessment to efficiently and sensibly be completed in 99% of the cases. In rare instances, district courts in this courthouse will follow up with questions that address circumstances or nuances specific to a particular *i.f.p.* applicant. (District courts also orally explore these subjects when a litigant appears to lack proficiency with the English language or is otherwise intellectually limited; this decidedly does not appear to be the case with Mr. Cady, who appears to be quite intelligent.) Nothing in the *i.f.p.* form precludes a district court from making reasonable inquiries on topics that bear on a particular applicant's status so as to fairly determine whether the applicant should be exempted from the presumptive filing fee established by the federal government.

Simply put, Mr. Cady appears to regard the question of whether he should pay a filing fee as an opportunity to have a stage and to amuse himself in front of a captive audience of attorneys and/or court personnel. There is nothing unlawful in that, of course, but the Court does not and cannot regard the issue of his filing fee as a joke or share Cady's position that the entire issue is a subject of entertainment value. Filing fees are presumptively imposed on all litigants so as to help defray the considerable expenses attendant to any case and to in effect preserve limited federal financial resources so that they can be used for any of a number of other potential purposes—ranging from educational funding, to food supplements for underprivileged children, to veteran's benefits, to law enforcement and homeland security expenses. Given Mr. Cady's refusal to provide a sufficient picture to determine whether he should be absolved in whole or in part from having to pay the filing fee, the Court declines any invitation to alter its rulings under Rule 60(b).

III. Even If Plaintiff Had Discharged His Burden of Showing Indigent Status, His Claims Would Be Dismissed Under 28 U.S.C. § 1915(e)(2)(B).

Even if Plaintiff somehow were exempted from needing to establish that he should be absolved from the presumptive filing fee requirement, his suit would independently be subject to dismissal under 28 U.S.C. § 1915(e)(2)(B).

A. Claims Asserted in the Amended Complaint

Plaintiff's ten-count Amended Complaint apparently stems from five misdemeanor criminal prosecutions initiated against Plaintiff in the Sixth District of the Cook County Circuit Court. (D.E. 6 ¶ 8.)[5] Plaintiff alleges that these prosecutions stem from "a conspiracy of state

---

[5] Plaintiff provides limited exhibits which indicate that at least some of the charges relate to allegations that Mr. Cady: (1) assaulted a Mr. Frederick Woolery by inviting Mr. Woolery to

10

actors and students" (*id.* ¶ 1), which conspiracy led to his arrest (on at least two occasions) for disorderly conduct and assault at South Suburban College (*id.* ¶¶ 1, 8). Plaintiff explains that the underlying arrests are the subject of a separate federal lawsuit,[6] and that this putative prong of the litigation is directed at the "prosecutory, official court reporter, and judicial functions of the criminal 'justice' system in the Sixth District of the Cook County Circuit Court." (*Id.* ¶ 1.) In his Amended Complaint, Plaintiff sums up his suit as being directed at the following alleged conduct which took place during the course of his state court criminal proceedings

> (A) the prosecutorial use against Plaintiff by numerous Assistant State's Attorneys of five criminal complaints, which were all unsworn and never presented to the Court, hence which were legally non-existent, and the judicial acceptance of the same as legal instruments, one of which the trial judge used to convict Plaintiff[;] (B) the failure on two occasions (with the reasonable expectation of a third occasion) of the criminal 'justice' system to provide Plaintiff with an official court reporter for [Plaintiff's state criminal] trial[;] (C) the prevention by a Courtroom bailiff of Plaintiff and . . . bystander witnesses from reading and writing in the courtroom in [Plaintiff's] defense and/or in cooperation with Plaintiff's defense counsel's defense of Plaintiff while [the bailiff] simultaneously permitted [the prosecuting attorneys] to read and write in the courtroom . . .[;] (D) the refusal of the Cook County, Illinois, Sixth District [Assistant] State's Attorney's Office to discuss Plaintiff's case with [Plaintiff] at a time when [Plaintiff] was functioning as [h]is own lawyer; (E) the refusal of [a] [c]ourtroom [b]ailiff to identify [h]erself to Plaintiff upon [h]is reasonable demand.

(*Id.* ¶ 2.)

Plaintiff brings this case under 42 U.S.C. § 1983, and he alleges that the Defendants violated various state and federal constitutional provisions as well as numerous state laws and

---

"step outside" for purposes of a physical confrontation at the South Suburban Community College; and (2) engaged in disorderly conduct by repeatedly and loudly yelling profanities at Ms. Betty Majors, again at South Suburban Community College.

[6] Plaintiff identifies the other federal suit as *Cady v. South Suburban College*, No. 02-8128. (D.E. 6 ¶ 1.) Judge Bucklo dismissed this suit with prejudice. *See Cady v. South Suburban Coll.*, 310 F. Supp. 2d 997, 998 (N.D. Ill. 2004). The case is presently on appeal.

11

administrative provisions. (*Id.* ¶ 4.) Plaintiff also contends that he is suing some Defendants "for committing the civil equivalent of certain crimes, for which there may not be a tortious cause of action that is cognizable by this Court, but [Plaintiff] brings such causes anyway out of [Plaintiff's] conviction, which [Plaintiff] hopes all courts will eventually adopt . . . ." (*Id.* ¶ 3.)

B.  28 U.S.C. § 1915(e)(1)(B)

As part of the initial review of a petition to proceed *in forma pauperis*, a district court must analyze the claims advanced in the complaint and dismiss them if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). A claim is frivolous within the meaning of Section 1915(e)(2) when it, *inter alia*, lacks an arguable basis in law or in fact. *See, e.g., Baker v. AME Church Judicial Council*, 320 F. Supp. 2d 786, 788 (N.D. Ind. 2004) (collecting cases). With respect to Section 1915(e)(2)(B)(ii), a district court, in reviewing the complaint, applies the standard used in a motion to dismiss. *See DeWalt v. Carter*, 224 F.3d 607, 611-12 (7th Cir. 2000) ("[W]e conclude that dismissals under § 1915(e)(2)(B)(ii) will be reviewed . . . in the same manner as dismissals under Rule 12(b)(6)."). Under this standard, Plaintiff's complaint fails on numerous bases.

C.  Claims Against Defendants Named in Caption but Not the Subject of Allegations in the Complaint

The caption of Plaintiff's Amended Complaint identifies a multitude of purported defendants, many of whom are never discussed in the body of Plaintiff's Amended Complaint. Seventh Circuit precedent teaches that "[w]here a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name

appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given *pro se* complaints." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974), *see also Hernandez v. DuPage County*, No. 96-8030, 1997 WL 598132, at *10 (N.D. Ill. Sept. 19, 1997) (collecting cases). The Amended Complaint is, therefore, dismissed as to these Defendants under 28 U.S.C. § 1915(e)(2)(b)(ii).

> D. Defendant Does Not Have Standing to Pursue Injunctive Relief Against the Defendant Judges.

Plaintiff names numerous state judges in his amended complaint. Plaintiff states in his amended complaint that he "seeks no compensatory damages against the judges."[7] (D.E. 6 ¶ 88.) Rather, he states that "[h]e seeks merely prospective injunctive relief [against the judges]." (*Id.*) In this regard, Plaintiff's Amended Complaint sets forth a laundry list of requested federal court injunctions directed at the executive and judicial branches of the government of the State of Illinois, all concerning the manner in which the State of Illinois and its judges conduct their criminal trials. (*Id.* ¶ 89.) Plaintiff contends that the injunctions are appropriate "since [h]e continues to operate within [the] jurisdiction and is likely to commit the same kind of acts (until or unless he learns from appellate courts that they are indeed illegal) for which he was arrested."

---

[7] Seventh Circuit case law has repeatedly recognized "the fundamental principle that judges are entitled to absolute immunity from damages for their judicial conduct." *Synder v. Nolen*, 380 F.3d 279, 286 (7th Cir. 2004) (quoting *Richman v. Sheahan*, 270 F.3d 430, 434 (7th Cir. 2001) (collecting Supreme Court authority)). The Seventh Circuit instructs that a judge "will be entitled to absolute judicial immunity if [the judge's] actions meet a two-part test: first, the acts must be within the judge's jurisdiction; second, these acts must be performed in the judge's judicial capacity." *John v. Barron*, 897 F.2d 1387, 1391 (7th Cir. 1990). If this test is met, "a judge will not be deprived of immunity even if the [complained of] action was in error, was done maliciously, was in excess of [the judge's] authority, and even if [the judge's] exercise of authority is flawed by the commission of grave procedural errors." *C.A. Brokaw v. Mercer County*, 235 F.3d 1000, 1015 (7th Cir. 2000) (citing *Stump v. Sparkman*, 435 U.S. 349, 356-357, 359 (1978)).

(*Id.* ¶ 88.) According to Plaintiff, Plaintiff "could, at any moment, be subject to the same kind of false arrest and prosecution before the same judges." (*Id.* ¶ 88.) Precedent teaches, however, that the "mere possibility" that Plaintiff may be subject to certain allegedly unconstitutional action or inaction by Illinois state court judges "does not establish a real and immediate case or controversy." *Knox v. McGinnis*, 998 F.2d 1405, 1413 (7th Cir. 1993); *accord City of Los Angeles v. Lyons*, 461 U.S. 95, 103-05 (1983); *see also Ramsden v. Agribank, FCB*, 214 F.3d 865, 868 (7th Cir. 2000) ("The Anti-Injunction Act generally prohibits federal courts from enjoining state court proceedings.") (citing 28 U.S.C. § 2283); *id.* at 871 (discussing *Younger* abstention and its relation to state criminal proceedings). Plaintiff lacks standing to pursue claims for injunctive relief with respect to the Defendant-Judges. Accordingly, his claims against them are dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

E. Claims Against the Assistant State's Attorneys

1. The Assistant State's Attorneys Are Absolutely Immune

The allegations against the assistant state's attorneys demonstrate that they are absolutely immune from suit, even assuming Plaintiff's allegations against them somehow could otherwise state a cognizable federal constitutional claim. *See Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."); *see also, e.g., Houston v. Partee*, 978 F.2d 362, 365 (7th Cir. 1992) ("[P]rosecutors are absolutely immune from liability for damages under 42 U.S.C. § 1983 . . . 'for their conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'"") (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)); *Nelson v. Doe*, No. 04-2365,

2004 WL 1558810, at *2 (N.D. Ill. June 22, 2004). The allegations against the prosecutors are directed at their alleged in-court actions or inactions in connection with Plaintiff's state court criminal proceedings. (*See* D.E. 6 ¶ 66 ("[Assistant State's Attorneys] . . . refused to speak . . . with Plaintiff about [h]is case at a time when [h]e was functioning as [h]is own lawyer.").) Plaintiff's claims against the assistant state's attorneys are, therefore, dismissed under 28 U.S.C. § 1915(e)(2)(B)(iii). *See Nelson v. Doe*, 2004 WL 1558810, at *2. This holding also independently warrants dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii). *See Anderson v. Simon*, 217 F.3d 472, 476 (7th Cir. 2000) (finding of absolute immunity warranted dismissal under Federal Rule of Civil Procedure 12(b)(6)).[8]

2. The Claims Against the Assistant State's Attorneys Are *Heck*-Barred

Additionally, and independently, the claims against the assistant states attorneys are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See id.* at 486-487 (holding that an individual convicted of a crime cannot bring a civil suit questioning the validity of the conviction until the

---

[8] Plaintiff's claim against the prosecutors—that they wrongfully failed to speak with him outside of the courtroom as a *pro se* criminal defendant—is also almost certainly substantively baseless. Anyone who has prosecuted a case involving a criminal defendant who has jettisoned his defense attorney and elected to proceed *pro se* knows the concerns of conversing with such a defendant and thereby misleading the person. Prosecutive offices are also sensitive to allowing their attorneys to be placed in situations where they can be subject to accusations of trying to mislead the *pro se* criminal defendant or of trying to impermissibly solicit admissions from the *pro se* defendant. Given that Mr. Cady's litigation history reveals a consistent pattern of suing a wide variety of people he comes in contact with, even in ordinary life, and given Mr. Cady's demeanor, the typical concerns of a prosecutor in any *pro se* criminal case would certainly be magnified for any prosecutor dealing with Mr. Cady as a *pro se* defendant. In any event, the Court is aware of no rule (and its research has found none) suggesting that it is unconstitutional or unlawful for State's Attorney Devine to direct his assistants not to communicate with *pro se* criminal defendants like Mr. Cady during their trials. Under such a scenario, the *pro se* litigant can direct any reasonable request for information or clarification to the trial court, which promptly can address the issue.

conviction is set aside); *see also Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) ("If [a plaintiff] makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars the civil suit."). Plaintiff repeatedly alleges that the actions or inactions of various assistant state's attorneys (most of whom are not identified) led to Plaintiff being "(wrongfully) convicted" (D.E. 6 ¶¶ 29, 35, 67). Plaintiff also repeatedly asserted his belief that he was prosecuted on the basis of defective complaints. The *Heck*-bar independently warrants dismissal of these claims under 28 U.S.C. § 1915(e)(2)(B)(ii).

F. Claim Against the Courtroom Bailiff

In Count VI of his Amended Complaint, Plaintiff identifies two incidents concerning an "Unknown Courtroom Bailiff" where that bailiff allegedly told Plaintiff that Plaintiff could not read or write in the courtroom (*id.* ¶ 59), which Plaintiff contends violated, *inter alia*, his First and Fourteenth Amendment rights. Even assuming Plaintiff has stated a cognizable federal claim, bailiffs enjoy absolute quasi-judicial immunity for actions "specifically ordered by the trial judge and related to the judicial function." *Robinson v. Freeze*, 15 F.3d 107, 109 (8th Cir. 1994). Plaintiff's allegations make clear that an alleged incident that took place on January 6, 2003, and was requested and/or sanctioned by the trial court judge in connection with Plaintiff's criminal proceedings. (*See* D.E. 6 ¶ 60.) Thus, even assuming Plaintiff has stated a cognizable federal claim, the unidentified bailiff is absolutely immune for this act, and this claim is dismissed under 28 U.S.C. § 1915(e)(2)(B)(iii). The other incident, which Plaintiff alleges took place on April 19, 2002, occurred more than two years prior to Plaintiff filing his suit. Plaintiff cannot sue for this purported violation of his federal rights. *See Licari v. City of Chicago*, 298 F.3d 664, 667-668 (7th Cir. 2002) ("A two year statute of limitations applies to section 1983 claims in

Illinois."). This claim is, therefore, independently subject to dismissal under 28 U.S.C. § 1915(e)(2)(ii).[9]

### G. Plaintiff's Claims Against Illinois Court Administrative Personnel and the Cook County Official Court Reporter Are Frivolous

Plaintiff alleges in Count III, *inter alia*, that he has a Fourteenth Amendment right "to be prosecuted and tried in nothing less than a courtroom prepared to officially record [h]is trial." (D.E. 6 ¶ 38.) Specifically, Plaintiff contends that, because court reporters were not available on January 6 and February 7, 2003—which resulted, he contends, in the start of his trial being delayed until March 20, 2003—his due process rights were violated. (*See, e.g., id.* ¶¶ 11, 13, 40.) In Count V, Plaintiff alleges that, because the court reporters were not available on January 6 and February 7, 2003, the "Illinois Supreme Court, Illinois Court Administrative personnel, and Cook County Official Court reporter personnel" (*id.* ¶ 53) breached their duty to "protect Plaintiff's rights to a speedy trial" under the Sixth and Fourteenth Amendments (*id.* ¶ 52). Mr. Cady received a trial on his misdemeanor charges within a approximately one year of the events in question; most criminal statutes of limitation allow for more than a year even before charges must be initiated. These claims are frivolous and are, therefore, dismissed under 28 U.S.C. 1915(e)(2)(B)(i).

### H. State Law Claims

---

[9] The claim against the unnamed court bailiff is also likely independently defective in that the bailiff was not identified by name within the applicable limitations period. *See* D.E. 1 at 2 (Plaintiff explaining that he "originally knew" the name of the unnamed bailiff "but has since misplaced his record of it"); *see also Eison v. McCoy*, 146 F.3d 468, 472 (7th Cir. 1998); *Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998) (citing, *inter alia*, *Wood v. Worachek*, 618 F.2d 1225, 1230 (7th Cir. 1980) (all explaining that "John Doe" designations normally do not extend limitations periods).

Counts IV, VIII, IX, and X all purport to assert state law causes of action. After holding that all of Plaintiff's purported federal causes of action are dismissed under 28 U.S.C. § 1915(e)(2)(B), the Court declines to reach them. Without holding or otherwise ruling that these counts properly assert claims under Illinois law, the Court (independent of all the other defects discussed in this opinion, which are operative on their own terms) dismisses the state claims without prejudice on the ground that the Court declines to exercise supplemental jurisdiction over them. *Accord, e.g., Groce v. Eli Lilly Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

I. Miscellaneous

The Court further notes that Mr. Cady vaguely intimates that one alternative to his frivolous litigation practices might be some sort of domestic terrorism. (*See* D.E. 8 at 2 ("American civilization . . . is only a shadow of its early or even mid-20th century self, and there is, apparently, no help for it. This and similar kinds of discouragingly disintegrative American phenomena make some Americans into people who are sometimes denounced as 'vexatious litigators.' But isn't this better than becoming terrorists?").) To be sure, Mr. Cady then follows up this statement with a reference to himself as, *inter alia*, "law-abiding, [and] well-intentioned." (*Id.*) Normally, the Court would let this entire sort of issue pass without comment. However, Mr. Cady revealed himself at the March 9, 2005 hearing to be somewhere between wily or clever (on the benign end of the spectrum) and cunning (on the other), so the Court is unclear as to what to make of his vague allusions. Under the circumstances, a brief response is likely in order. Mr. Cady is respectfully advised that this is not the time in this Nation's history, nor the place in this

country, to make reckless allusions to domestic terrorism. Mr. Cady's frivolous lawsuit is made no stronger by his opaque reference to terrorism followed by his comment concerning "the need for courts that are willing to work with *pro se* litigants . . . ." *Id.* Cady's Rule 60(b) request for reconsideration of the denial of his *in forma pauperis* petition, and for reconsideration of the concomitant dismissal of his suit without prejudice, is denied.

Finally, Mr. Cady suggests that any denial of his *in forma pauperis* petition should be certified for an interlocutory appeal. This request is denied as frivolous. The propriety of interlocutory appeal is governed by 28 U.S.C. § 1292. Mr. Cady suggests no basis by which his case would qualify for the exceptional step of being certified for consideration as an interlocutory appeal. None is apparent. Refusing to absolve someone from the presumptively required filing fee who refuses to answer straightforward questions about his financial picture would not seem to present "a controlling question of law as to which there is a substantial ground for difference of opinion." 28 U.S.C. § 1292(b). Mr. Cady's request for certification pursuant to Section 1292 is denied.[10]

---

[10] Cady also suggests that he be given a definite time period to assemble the filing fee. The Court need not pass on this issue now. If Mr. Cady wishes to pay the filing fee and file another complaint, or to file another *i.f.p.* petition, the prior dismissal of his suit without prejudice does not preclude him from doing so. Whether Mr. Cady's decision to not answer questions concerning his financial status or to pay the filing fee earlier will affect the litigation (or will provide any additional limitations bars against his claims in addition to the numerous bars discussed above), remains to be seen. *See generally Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 923 (7th Cir. 2003) ("A dismissal without prejudice is treated for statute of limitations purposes as if suit had never been filed."); *Newell v. Hanks*, 283 F.3d 827, 834 (7th Cir. 2002); *Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000) (holding that "if the suit is dismissed without prejudice, meaning that it can be refiled, then the tolling effect of the filing of the suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing").

## CONCLUSION

For the reasons stated above, Cady's Rule 60(b) Motion for Relief, and his Motion for Leave and its request for interlocutory certification, are denied.

So ordered.

*Mark Filip*
Mark Filip
United States District Judge
Northern District of Illinois

Dated: 4·22·05